STEVEN G. KALAR
Kalar Law Office
1569 Solano Avenue #312
Berkeley CA 94707
Telephone: (415) 295-4675
Facsimile: (415) 338-9950
Email: Steven@KalarLaw.com

Counsel for Defendant Booth

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JANIERO BOOTH,<br>Defendant. | **Case No.:** CR 25-0402 JST<br>**DEFENSE SENTENCING MEMORANDUM** |

## INTRODUCTION

The routes differ, but the destination is the same: the government, the defense, and the Office of Probation all agree that the correct ultimate guideline range in this case is Criminal History Category VI, Offense Level 15: 41-51 months. *See PSR Recommendations* at 19 ¶ 79.

During the last five years the average JSIN range for offenders convicted of this offense, in this guideline range, was 38 months. *Id.* at 21-22 ¶ 95. The median sentence was 41 months. *Id.*

Unfortunately, the offense of conviction for Mr. Booth carries a sixty-month mandatory-minimum sentence. *PSR* at Recommendation pg. 2. "In consideration of the mandatory minimum sentence, the Probation Office has no choice but to recommend a sentence of 60 months in custody." *Id.* The defense, like Probation, has no choice, and joins the Probation Office's recommendation for a sixty-month custodial sentence.

## DISCUSSION

### I. This Court should Reject the Gun Enhancement for a Conspirator who Never Saw the Warehouse, Was Unaware of His Co-Conspirators, and Had No Reasonable Anticipation that a Gun Would be Involved in the Burglary

There are three unresolved defense objections before the Court. *See PSR Addendum* at 1-2.

1. **Objection One, Minor Role and Firearm Specific Offense Adjustments:** The defense objects  to the proposed minor role reduction in the PSR. *Id.* at 10 ¶ 35. The defense further objects to the proposed two offense-level increase for use of a gun during the conspiracy, under USSG § 2D1.1(b)(1). *See* PSR at 10 ¶ 33;

2. **Objection Two, Victim Impact statements:** The defense objects to the inclusion of victim impact statements, when Booth did not actually participate in any of the three burglaries and was completely unaware that there was any gun involved;

3. **Prohibition of alcohol during supervised release**: The defense objects to the complete ban on any alcohol during supervised release.

The defense submits on its written objections in the PSR to 1) the minor role adjustment, 2) the victim impact statements, and 3) the prohibition of all alcohol during supervised release.

The defense joins the government and objects to Probation's recommended adjustment for use of a firearm during the offense.

#### A. The Firearm Specific Offense Adjustment Is Likely to Jeopardize RDAP

First, it bears emphasis that the defense objection to the firearm enhancement is not just academic. Even if the final guideline range is below the mandatory-minimum sixty-month sentence irrespective of this adjustment, this firearm bump has a significant real-world impact by potentially barring Booth from RDAP. As discussed in great depth in the PSR, Mr. Booth has a profound drug addiction problem that likely arises from self-medication for PTSD. *See* PSR at 18 ¶ 72. "Mr. Booth is interested in participating in substance abuse treatment." *Id.* More specifically, Mr. Booth would ask this Court to recommend that he participate in the Bureau of Prisons' Residential Drug Abuse Program (RDAP). His treatment goal, however, is likely to be unattainable if the gun enhancement is (incorrectly) left in the presentence report. The BOP makes inmates who have a firearm ineligible for the reduction of custodial sentence that comes from successful completion of RDAP. *See* 28 C.F.R. §

550.55(b)(5)(ii); *see also Peck v. Thomas*, 697 F.3d 767 (9th Cir. 2012) (upholding BOP policy barring sentence reduction). Because RDAP is so over-subscribed, it has been reported that inmates who will not get sentence reductions are put to the end of the program's line – meaning they will effectively never be provided treatment.

Fortunately, this problem is easily avoided because the firearm specific offense adjustment is legally inappropriate in this case.

**B. Use of a Firearm Was Not "Reasonably Foreseeable" to Booth**

The guideline at issue for the firearm adjustment is U.S.S.G. § 2D1.1. That guideline provides:

**(b) Specific Offense Characteristics**

(1) If a dangerous weapon (including a firearm) *was possessed*, increase by 2 levels.

U.S.S.G. § 2D1.1 (emphasis added).

There is no dispute that Mr. Booth did not possess a firearm during the marijuana burglaries. In fact, it is undisputed that Mr. Booth never even *made it* to the marijuana burglaries: he turned around long before he got to the warehouse. He is therefore not on any warehouse surveillance video, did not know or see any of his co-conspirators, and certainly had no idea that there was a weapon involved (or that the weapon would ultimately be used against a police officer). This specific offense adjustment is therefore not appropriate under either an actual or constructive theory of firearm possession.

Probation instead appears to rely on a relevant conduct theory in support of the enhancement. *See PSR Addendum* at 2 ¶ 7. Admittedly, "a defendant can . . . possess a firearm for purposes of § 2D1.1(b)(1) under co-conspirator liability principles." *United States v. Harris*, 230 F.3d 1054, 1057 (7th Cir. 2000). The *foreseeability* of a weapon, however, is a critical factor when relying on a conspiracy theory for this enhancement.

As the Eleventh Circuit has explained, "A firearm enhancement may also apply to a defendant when the firearm is possessed by a co-conspirator . . . . In that situation, the government must show that "(1) the possessor of the firearm was a co-conspirator, (2) the possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy at the time of possession, and (4) the co-conspirator possession *was reasonably foreseeable* by the defendant." *United States v.*

*Graham*, 123 F.4th 1197, 1288 (11th Cir. 2024) (emphasis added) (internal citation omitted).

The Seventh Circuit's discussion in *Harris* is illustrative of the foreseeability principle in this context. In *Harris*, the defendant "worked the table" in the production of crack cocaine in a large narcotics distribution ring. 230 F.3d at 1056. "He was conspicuously in the presence of co-conspirators who routinely and openly carried firearms, and once while he was present at one [of the drug houses] several co-conspirators exchanged gunfire with other individuals." *Id.* Harris objected to the Section 2D1.1(b)(1) specific adjustment for a firearm during a drug conspiracy. *Id.*

Even under these facts, the Seventh Circuit refused to endorse the imposition of the specific offense adjustment under an actual or constructive possession theory. *Id.* at 1057 ("There is no question that firearms were present during this offense, but to show constructive possession the government had to show that Harris demonstrated ownership, dominion, authority, or control of at least one of the caches of weapons . . . .") (citation omitted).

The Court in *Harris* did ultimately uphold the firearm enhancement on a conspiracy theory. *Id.* at 1058. As noted above, the Court recounted the many different occasions where Harris' co-conspirators possessed weapons in front of Harris during the conspiracy – *including a firefight*. *Id.* Moreover, Harris failed to object to any of the factual allegations regarding guns in the PSR. *Id.* Given these facts, and under clear-error review, the appellate court upheld the imposition of the firearm adjustment on a conspiracy theory.

Booth's case is a far cry from the foreseeability that merited the adjustment in *Harris*. As set forth in the PSR, Booth's only role in the conspiracy was an extremely short call from a co-conspirator. *See* PSR at 7 ¶¶ 16-19. Booth never actually made it to the warehouse, never actually saw any of the marijuana, never met (and didn't know) his co-conspirators, and certainly had no idea that one of them brought a gun to the burglary. As the PSR correctly states, "There is no evidence that Booth was present at the warehouse during the third robbery or that he had a role in planning the robbery." *Id.* at ¶19. Assuming that a warehouse was even discussed in Booth's brief call, it is not foreseeable that burglars of an unoccupied warehouse in the middle of the night would bring a weapon. The foreseeability analysis is thus very different from, for example, a conspiracy to rob an open marijuana *dispensary* during the day, a residence with occupants inside, or a bank during

operating hours. On the unusual facts of Booth's case, it was not reasonably foreseeable to Booth that his co-conspirators would be armed. The specific offense adjustment is not appropriate.

**C. The Firearm Enhancement is Not Legally Permitted Under *Kisor***

*Kisor* prevents the expansion of liability to Mr. Booth based solely on a theory set forth in the guideline commentary. *See Kisor v. Wilkie*, ––– U.S. ––––, 139 S. Ct. 2400, 204 L.Ed.2d 841 (2019). In *Kisor*, the Supreme Court severely limited the judicial deference owed to federal agency's interpretation of its own regulations and rules. *Id.*

The Ninth Circuit has made it clear that this new approach applies to the Sentencing Guidelines: "The more demanding deference standard articulated in *Kisor* applies to the Guidelines' commentary. *Kisor* directly examined and narrowed *Seminole Rock* and *Auer* deference in the context of an administrative agency's interpretation of its own regulation, noting that such deference is not permitted without first finding the regulation ambiguous." *United States v. Castillo*, 69 F.4th 648, 655–56 (9th Cir. 2023).

The relevant guideline itself is clear and unambiguous: for the firearm enhancement to apply, the defendant must "possess" a firearm. U.S.S.G. § 2D1.1(b)(1). It is undisputed that Booth did not actually or constructively, possess any firearm. Critically, actual or constructive possession requires *knowledge*: "In *Delgado v. United States,* 327 F.2d 641 (9th Cir.1964), we explained that possession can be joint or several, constructive as well as actual, but it must also be knowing. It cannot be left to 'pure speculation as to whether [one defendant] alone or [the other defendant] alone, or both of them, had possession.'" *United States v. Cazares*, 121 F.3d 1241, 1245 (9th Cir. 1997). There are simply no facts to suggest that Booth knew a firearm was involved in the conspiracy.

The Probation Office appears to concede that Section 2D1.1(b)(1) itself does not make Booth liable for the firearm. It instead relies on U.S.S.G. § 1B1.3(a)(1)(B) to sweep Booth into firearm possession via the conspiracy. *PSR Addendum* at 2 ¶ 7. That expansion of criminal liability, however, is only appropriate if the language of Section 2D1.1(b)(1) was ambiguous. It is not: the guideline clearly and unambiguously requires "possession." U.S.S.G. § 2D1.1(b)(1). After *Kisor* and *Castillo*, this Court must limit itself to the (congressionally approved) clear language of the guideline itself. Because Booth did not possess the firearm, the specific offense adjustment is not legally permitted.

## II. A Sentence of Sixty Months is Appropriate Given the Horrible Childhood Trauma Suffered by Booth

At the request of the defense Dr. Scott Lines has evaluated Mr. Booth, and diagnosed the defendant with Post-Traumatic Stress Disorder. *See Exhibit A, Psychological Evaluation* (filed under seal).

The defense asks the Court to direct Probation to include this evaluation in its entirety in the materials transmitted to the BOP, to assist in treatment while Mr. Booth is in custody.

This PTSD arises from childhood abuse that rises to the level of a Dickens novel. Among other tragedies, Mr. Booth was beaten by a deranged "father" in a foster home – who also knocked out the teeth of an older brother who tried to protect Booth. *Id.* at 4.

The trauma was only aggravated when Mr. Booth's mother committed suicide when he was ten. *Id.*

As a result of this trauma, Mr. Booth has self-medicated with a staggering amount of marijuana since he was a child. *See PSR* at 18 ¶ 72. Mr. Booth's untreated PTSD, and his drug addiction, contributed to his decision to join the conspiracy in this case (although he was wise enough to not actually show up at the warehouse and effectively withdrew from the conspiracy before committing any overt acts).[1]

Both the guidelines and JSIN point towards a sentence well below the sixty-month mandatory minimum sentence. Even if the guideline range were higher than five years, however, a sixty-month custodial term is appropriate given the unique childhood characteristics of this defendant.

## III. Mr. Booth Requests a California Designation, and a Referral to RDAP

Mr. Booth remains very close to his father and siblings, who all live in the Bay Area. He accordingly asks that this Court recommend that BOP designate him as close as possible to the San Francisco Bay Area.

In addition, Mr. Booth seeks treatment for his addiction to drugs and alcohol. He therefore

---

[1] Booth withdrew from the conspiracy before committing any overt act. Unfortunately, for a federal *drug* conspiracy, that fact is likely relevant only for sentencing – his withdrawal probably has no bearing on guilt.

respectfully requests that the Court recommend the RDAP program while he is incarcerated.

**CONCLUSION**

For the foregoing reasons, Mr. Booth asks that this Court impose a custodial term of five years.

In addition, Mr. Booth asks that the Court reject the firearm specific offense adjustment in the Presentence Report, and direct that it be removed.

Respectfully submitted,

Dated: November 24, 2026

STEVEN G. KALAR
Kalar Law Office

/S

Counsel for JANIERO BOOTH